UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
|
DORCHESTER FINANCIAL SECURITIES, |
|
Plaintiff, |
|
-against- |
|
BANCO BRJ, S.A. and THE SOCIETY |
for WORLDWIDE INTERBANK FINANCIAL |
TELECOMMUNICATION (S.W.I.F.T.), |
|
Defendants. |
|
DORCHESTER FINANCIAL SECURITIES, |   02 Civ. 7504 (KMW) (KNF)
|
Judgment Creditor, |   <u>OPINION AND ORDER</u>
|
-against- |
|
BANCO BRJ, S.A., |
|
Judgment Debtor. |
|
DORCHESTER FINANCIAL SECURITIES, |
|
Petitioner, |
|
-against- |
|
BANCO BILBAO VISCAYA, |
|
Respondent. |
|
-------------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

Petitioner Dorchester Financial Securities ("Dorchester") moves for

reconsideration, pursuant to Fed. R. Civ. P. 59(e) and Local Rule 6.3, of the Court's

December 23, 2009 Opinion and Order (the "December 23 Order"). The Court's

December 23 Order denied, with prejudice, Dorchester's petition for a turnover order

1

directing Respondent, Banco Bilbao Viscaya ("Banco Viscaya"), to pay Dorchester the cash value of two cashier's checks allegedly owned by the judgment debtor in this case, Banco B.R.J., S.A. ("BRJ"). In the December 23 Order, the Court found that the cashier checks, purportedly issued by a subsidiary of Banco Viscaya, were "counterfeit, and therefore, unenforceable." (12/23/09 Order at 2.) Dorchester has not provided any reason that would cause the Court to reconsider its December 23 Order. Accordingly, Dorchester's motion is DENIED. (Dkt. No. 52.)

Respondent Banco Viscaya also moves for sanctions pursuant to Rule 11 against Dorchester and its counsel, T.J. Morrow, on the grounds that Petitioner's motion for reconsideration (1) was filed for an improper purpose; (2) advances frivolous legal arguments that are not warranted by existing law; and (3) continues to assert factual contentions that lack evidentiary support. The Court concludes that Dorchester's filing of the instant motion and the allegations contained therein do not warrant sanctions. Accordingly, Respondent's motion for sanctions is DENIED.

The Court assumes the parties' familiarity with the facts and procedural history of this case.

I. Rule 11 Safe-Harbor

As an initial matter, Dorchester, by letters dated March 3, 2010 and March 17, 2010, seeks to withdraw its motion for reconsideration in order to take advantage of Rule 11's safe harbor provision. Fed. R. Civ. P. 11(c)(1)(A) requires that the moving party serve its sanctions motion at least 21 days before presenting it to the court, giving the opposing party — here, Dorchester — the opportunity to withdraw or appropriately correct any factual or legal contentions. See Hadges v. Yonkers Racing Corp., 48 F.3d

1320, 1327-28 (2d Cir. 1995). Respondent submits documentary evidence showing that its motion papers were delivered, via Fed Ex, to Mr. Morrow's shared law office on January 21, 2010 — more than 21 days prior to Respondent's filing of the instant sanctions motion on February 16, 2010. Dorchester sought to withdraw its motion for reconsideration <u>after</u> Respondent filed its sanctions motion with the Court, and therefore, it appears to be too late for Dorchester to take advantage of the Rule 11 safe harbor.

Mr. Morrow contends, however, that he first received notice of Respondent's motion for sanctions on February 16, 2010 (when it was filed via ECF) and that he did not receive a copy of the motion (due to various law office failures) until February 24, 2010. It is unclear whether Dorchester is arguing that service was defective, or that, given its alleged lack of actual pre-filing notice of the sanctions motion, the Court should read into Rule 11's safe harbor provision an equitable tolling period. The Court, however, need not determine whether Rule 11's safe harbor is available in this case, because the Court, as set forth below, denies Dorchester's motion for reconsideration and Respondent's motion for sanctions on their merits.[1]

II. <u>Dorchester's Motion for Reconsideration</u>

The standard for a motion for reconsideration pursuant to Rule 59(e) and Local Rule 6.3 is strict. The moving party must establish: (1) that the court overlooked controlling decisions or data; (2) that there has been a change in controlling law; (3) that new evidence has become available; or (4) that reconsideration is necessary to correct a clear error or prevent manifest injustice. <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration is not an opportunity for a party to advance

---

[1] The Court construes Dorchester's request to withdraw its motion for reconsideration as conditional on the Court finding that Rule 11's safe harbor is available in this case. The Court thus considers Dorchester's motion for reconsideration on its merits.

3

new facts, issues, or arguments not previously presented to the court, or to obtain a rehearing on the merits with regard to issues already decided.  See Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998).  The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.  Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999).

Dorchester does not provide an appropriate basis for reconsideration of Court's December 23 Order.

First, Dorchester contends that the Court should withdraw its December 23 Order because the correct custodian, BBVA Bancomer (the Mexican subsidiary of Respondent Banco Viscaya and the purported issuer of the cashier's checks) was not served by Dorchester and therefore was not subject to the Court's jurisdiction.  Dorchester did not raise this argument in the underlying turnover petition, and therefore, Dorchester is foreclosed from relying on it.  See Abrahamson v. Board of Educ., 237 F. Supp. 2d 507, 510 (S.D.N.Y. 2002).

In any event, Dorchester's contention is without merit.  The issue of personal jurisdiction over BBVA Bancomer, which was raised by Respondent as an alternative basis for dismissal, was briefed and presented to the Court on the turnover motion.  The Court determined that it need not decide the jurisdictional question as to BBVA Bancomer, as the evidence was sufficient to deny the petition on the independent ground that the judgment debtor has no ownership interest in the checks because the checks were counterfeit, and therefore, unenforceable as against any entity.  BBVA Bancomer's absence as a party in the case is irrelevant to this determination.[2]

---

[2] Dorchester fails to cite any authority for the proposition that a plaintiff who previously asserted jurisdiction over a defendant may later seek to nullify an adverse determination on the merits on

4

Second, Dorchester argues that it was error for the Court to have considered the declaration submitted by Mr. Escobar, a lawyer at BBVA Bancomer who initiated a prior internal investigation into the checks at issue, because BBVA Bancomer was not a party to the case. This argument is also raised for the first time, and Dorchester is foreclosed from relying on it. In any event, the contention is without merit. Courts routinely rely on affidavits and declarations submitted by non-parties to a case; indeed, Dorchester itself relied on non-party affidavits in support of the underlying petition and the instant motion for reconsideration. (See Garcia Aff.; Sanchez Aff.; Morrow Aff.)

Finally, Dorchester argues that it was error for the Court to have considered the Escobar Declaration and the matters contained in the attached audit report because Mr. Escobar did not have personal knowledge of the results of the investigation. Dorchester, in failing to object to the admissibility of the Escobar Declaration and Audit Report in its turnover motion, waived any challenge to it. See H. Sand & Co., Inc. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991); 10 A.C. Wright, A. Miller & M Kane, Federal Practice and Procedure § 2722 at 384-85 (3d ed. 1998) (any objection to material introduced on summary judgment motion "must be timely or it will be deemed to have been waived"); see also December 23 Order at 7-8 (summary judgment analysis applies to special proceeding for a turnover order pursuant to C.P.L.R. § 5225(b)). In any event, Mr. Escobar, who works in BBVA Bancomer's legal department, stated in his declaration that the investigation into the cashier's checks was undertaken at his request, and that he received the annexed audit report summarizing the results of that investigation. Mr. Escobar, therefore, had personal knowledge of the investigation and matters contained in

---

the basis that jurisdiction was lacking after all. The decisions Dorchester cites involve a defendant's attempt to nullify a ruling on the ground that it had not been properly served.

5

the Audit Report and it was proper for the Court to rely on his declaration in reaching its conclusion that the checks were counterfeit.[3]  See Searles v. First Fortis Life Ins. Co., 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000).

Accordingly, Dorchester's motion for reconsideration is denied.

## II. Respondent's Motion for Sanctions

Under Fed. R. Civ. P. 11(b), "by presenting to the court a pleading, written motion, or other paper," an attorney certifies "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances that":

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

"[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness," Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000); it is "not based on the subjective beliefs of the person making the statement." Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 387 (2d Cir. 2003).[4]

---

[3] The Court has considered Dorchester's remaining contentions, including its assertion that the Court "overlooked" its version of the facts, and finds that they are without merit.

[4] Respondent seeks, as sanctions for the alleged Rule 11 violations, attorneys' fees in the amount of $178,474.90 and disbursements in the amount of $5,547.52.  The Court notes that it "has significant discretion in determining what sanctions, if any, should be imposed for a violation," and that "sanctions should not be more severe than reasonably necessary to deter repetition" of the sanctionable conduct.  Fed. R. Civ. P. 11 adv. comm. notes; see E. Gluck Corporation v. Rothenhaus, 252 F.R.D. 175, 179-80 (S.D.N.Y. 2008).

"Although the imposition of sanctions is within the province of the district court, 'any such decision [should be] made with restraint and discretion.'" Pannonia Farms, Inc. v. USA Cable, 426 F.3d 650, 652 (2d Cir. 2005) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999)). "When divining the point at which an argument turns from merely losing[,] to losing and sanctionable[,] courts must resolve all doubts in favor of the signer of the pleading." Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) (internal quotations marks omitted); see Neshewat v. Salem, 365 F. Supp. 2d 508, 528 (S.D.N.Y. 2005).

Respondent argues that sanctions are appropriate because Dorchester's motion for reconsideration (1) was filed for an improper purpose, i.e., to relitigate Dorchester's petition for a turnover order; (2) advances frivolous legal arguments that are not warranted by existing law; and (3) continues to assert factual contentions that lack evidentiary support.[5] The Court disagrees.

In this case, Dorchester sought reconsideration, claiming that the Court erred (1) in finding that the cashier's checks were counterfeit, and (2) in adjudicating the issue in the absence of BBVA Bancomer as a party to the case. There is, however, no evidence that Dorchester brought the motion for any improper purpose, such as "to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(1).

---

[5] The Advisory Committees' notes explain that "[g]iven the "safe harbor' provisions [of Rule 11] . . . a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." Fed. R. Civ. P. 11 adv. comm. notes. The Court construes Respondent's motion for sanctions as limited to Dorchester's motion for reconsideration, as any motion for sanctions directed at the original petition would be untimely. See In re Pennie & Edmonds LLP, 323 F.3d 86, 89-90 (2d Cir. 2003).

The legal arguments advanced in Dorchester's motion for reconsideration are not sanctionable. "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995) (quoting Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir. 1994)). In its motion, Dorchester raised evidentiary objections to the admissibility of certain evidence in the underlying petition, and made procedural arguments related to the absence of certain parties to the case. Although, as set forth above, the Court has found these contentions to be without merit, they are not objectively unreasonable, and thus do not warrant sanctions. See Abdelhamid, 515 F. Supp. 2d at 392.

Finally, with respect to the factual contentions advanced in the motion for reconsideration — specifically, that the cashier's checks are real obligations of Banco Viscaya and that Banco BRJ is the true owner of the checks — the Court finds that sanctions are not appropriate. "A statement of fact can give rise to the imposition of sanctions only when the 'particular allegation is utterly lacking in support.'" Kiobel v. Millson, 592 F.3d 78, 81 (2d Cir. 2010) (quoting Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 388 (2d Cir. 2003)); see also Fed. R. Civ. P. 11 adv. comm. notes. (noting that the fact that "summary judgment is rendered against a party does not necessarily mean, for the purposes of [Rule 11], that it had no evidentiary support for its position"). The factual contentions advanced by Dorchester are not utterly lacking in support: the cashier's checks appear on their face to be real obligations of Banco Viscaya, and the

information the Court relied on in finding that the checks were counterfeit (principally, an internal BBVA Bancomer audit report) were uniquely in the hands of Banco Viscaya. The Court does not believe, given the complexities of the case, that Dorchester's assertion in its motion for reconsideration that the Court erred in making this finding (and erred in doing so without an evidentiary hearing) warrants the imposition of Rule 11 sanctions.[6]

## CONCLUSION

For the reasons stated above, the Court DENIES Dorchester's motion for reconsideration (Dkt. No. 52) and DENIES Banco Viscaya's motion for sanctions (Dkt No. 59.) The case shall remain closed.

SO ORDERED.

Dated: New York, New York
       June _15_, 2010

                                        /s/ Kimba M. Wood
                                        Kimba M. Wood
                                        United States District Judge

---

[6] On March 17, 2010, Mr. Morrow faxed a letter to the Court purporting to respond to certain aspects of Respondent's reply memorandum. (Dkt. No. 68.) The Court has not considered the allegations contained in Mr. Morrow's letter in deciding the instant motions, and therefore a response by Respondent to Mr. Morrow's attempted "sur-reply" submission is not necessary.

9